# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| SHIRLEY M. SLONE,  )<br>   Plaintiff,  )<br>                    )<br>v.                                )<br>                                   )<br>                                   )<br>MICHAEL J. ASTRUE,  )<br> Commissioner of Social Security,  )<br>   Defendant.  ) | Civil Action No. 2:10cv00018<br>**REPORT AND**<br>**RECOMMENDATION**<br><br>By:   Pamela Meade Sargent<br>United States Magistrate Judge |

*I. Background and Standard of Review*

The plaintiff, Shirley M. Slone, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2003 & Supp. 2010). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a

-1-

particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Slone protectively filed her application for DIB on November 14, 2006, alleging disability as of January 19, 2006, based on "nerves," depression, insomnia, arthritis in her hip, rib pain, headaches, swelling in her feet and ankles, fatigue, bladder problems and dizziness. (Record, ("R."), at 13, 83-85, 116, 145, 185.) The claim was denied initially and upon reconsideration. (R. at 27-29, 33, 35-37, 39-41.) Slone then requested a hearing before an administrative law judge, ("ALJ"). (R. at 42.) The ALJ held a hearing on April 17, 2009, at which Slone was represented by counsel. (R. at 702-45.)

By decision dated May 8, 2009, the ALJ denied Slone's claim. (R. at 13-23.) The ALJ found that Slone met the nondisability insured status requirements of the Act for DIB purposes through March 31, 2012. (R. at 15.) The ALJ also found that Slone had not engaged in substantial gainful activity since January 19, 2006. (R. at 15.) The ALJ found that the medical evidence established that Slone suffered from severe impairments, namely osteoarthritis, migraine headaches, chronic fatigue syndrome and obesity, but he found that Slone did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15, 18.) The ALJ also found that Slone had

the residual functional capacity to perform light work[1] that did not require more than frequent pushing and pulling with her right upper extremity, that could be performed predominately indoors and that did not require concentrated exposure to excess humidity, pollutants and respiratory irritants. (R. at 18-19.) The ALJ found that Slone was able to perform her past relevant work as a store manager and a bookkeeper. (R. at 22-23.) Thus, the ALJ found that Slone was not under a disability as defined under the Act and was not eligible for benefits. (R. at 23.) *See* 20 C.F.R. § 404.1520(f) (2010).

After the ALJ issued his decision, Slone pursued her administrative appeals, (R. at 80), but the Appeals Council denied her request for review. (R. at 5-9.) Slone then filed this action seeking review of the ALJ's unfavorable decision which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2010). This case is before the court on Slone's motion for summary judgment filed September 13, 2010, and on the Commissioner's motion for summary judgment filed October 13, 2010.

## II. Facts

Slone was born in 1954, (R. at 83), which classifies her as a "person of advanced age" under 20 C.F.R. § 404.1563(e). She has a high school education and some college education. (R. at 203.) Slone has past relevant work experience as a bookkeeper and a store manager. (R. at 19, 117.)

---

[1] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, she also can do sedentary work. *See* 20 C.F.R. § 404.1567(b) (2010).

Mr. Jackson,[2] a vocational expert, was present and testified at Slone's hearing. (R. at 744.) Jackson classified Slone's past work as a bookkeeper as sedentary[3] and skilled and her past work as a store manager as light and skilled. (R. at 744.)

In rendering his decision, the ALJ reviewed records from Life Recovery; Dr. Marilou V. Inocalla, M.D.; Eugenie Hamilton, Ph.D., a state agency psychologist; Dr. J. P. Sutherland Jr., P.C.; Dr. Ravi K. Titha, M.D.; Dr. Robert McGuffin, M.D., a state agency physician; E. Hugh Tenison, Ph.D., a state agency psychologist; Dr. Frank M. Johnson, M.D., a state agency physician; University of Virginia; Dr. Ashraf Mena, M.D.; Dr. James D. Moore Jr., M.D., a gynecologist; Buchanan General Hospital; and Dr. Emory H. Robinette, M.D.

Slone was treated by Dr. Ashraf Mena, M.D., from September 2004 through April 2006 for complaints of weight gain, muscle weakness, fatigue, insomnia, depression, anxiety, hypertension and blurred vision. (R. at 552-625.) Dr. Mena diagnosed Type II diabetes mellitus, hypothyroidism, chronic fatigue, obesity, hypertension, hyperlipidemia, peripheral neuropathy, insomnia, depression, anxiety, fibromyalgia and menopause. (R. at 565, 570, 576, 581, 586, 591, 596.)

---

[2] Mr. Jackson's first name is not disclosed. (R. at 702-03, 744.)

[3] Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 404.1567(a) (2010).

On January 18, 2005, Slone saw Dr. J. P. Sutherland Jr., D.O., for complaints of headaches and shoulder pain. (R. at 220.) On March 16, 2005, Slone complained of headaches, chronic fatigue and acid reflux. (R. at 219.) On May 16, 2005, Slone had a Baker's cyst[4] of the right knee with decreased range of motion. (R. at 218.) On July 19, 2005, Slone complained of insomnia and headaches. (R. at 217.) Dr. Sutherland reported that he found no evidence of neurological deficits. (R. at 217.) He diagnosed common vascular migraines, chronic fatigue syndrome, climacteric menopause and insomnia. (R. at 217.) On September 20, 2005, Slone reported a history of insomnia. (R. at 216.) She complained of right upper back pain and headaches. (R. at 216.) Slone had swelling on the posterior aspect of the right knee with Baker's cyst. (R. at 216.)

On February 28, 2006, Slone complained of headaches and a history of chronic fatigue. (R. at 215.) On August 9, 2006, Slone complained of insomnia, a history of fibromyalgia and chronic fatigue. (R. at 214.) Slone had multiple muscle spasms in her lower back. (R. at 214.) She had decreased range of motion of the lumbar spine with lifting, bending, stooping and squatting. (R. at 214.) On October 9, 2006, Slone complained of insomnia with chronic fatigue, fibromyalgia and migraine headaches. (R. at 213, 269.) Dr. Sutherland reported that Slone had decreased range of motion of the cervical spine. (R. at 213, 269.) Slone had multiple joint pains of the neck, shoulders and back. (R. at 213, 269.) On October 1, 2008, Slone complained of right shoulder pain. (R. at 663.) She had tenderness over the C4, C5 and C6 disc spaces. (R. at 663.) Dr. Sutherland reported right shoulder crepitus with tenderness to flexion, extension and abduction. (R. at 663.)

---

[4] Baker's cyst is defined as a collection of synovial fluid that has escaped from the knee joint or from a bursa and has formed a synovial-lined sac behind the knee. *See* STEDMAN'S MEDICAL DICTIONARY, ("Stedman's"), 85 (1995.)

She had tenderness and muscle spasms in the lumbar paraspinal muscles. (R. at 663.) Slone had difficulty stooping and squatting. (R. at 663.) Slone was given an injection of Xylocaine in the right shoulder. (R. at 663.) On December 1, 2008, Slone complained of right shoulder and right hip pain. (R. at 661-62.) She had tenderness over the C4, C5 and C6 disc spaces, spasm of the cervical paraspinal muscles and decreased range of motion. (R. at 662.) Dr. Sutherland diagnosed synotenovitis of the right shoulder. (R. at 661.) On March 10, 2009, Slone complained of right shoulder and neck pain. (R. at 659.)

Slone received treatment for depression and anxiety at Life Recovery from May 2006 to March 2009. (R. at 206-12, 225-26, 543-51.) During her initial evaluation in May 2006, Dr. Marilou V. Inocalla, M.D., diagnosed Slone with a recurrent, moderate major depressive disorder and a generalized anxiety disorder and assessed her then-current Global Assessment of Functioning score[5] at 60.[6] (R. at 212.) In September 2006, Slone was alert and oriented, she had good eye contact, her speech was coherent, her concentration was only somewhat impaired, and her memory for simple tasks was intact. (R. at 208.) Subsequent progress notes show that Slone's symptoms varied as her medication was adjusted, but by November 2006, she reported that her treatment with Geodon[7] and Effexor was helping. (R. at 206.) While she complained of insomnia, she would not discuss a prescription for Ambien. (R. at 206.) Dr. Inocalla reported that Slone had rapid

---

[5] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994.)

[6] A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning...." DSM-IV at 32.

[7] Geodon is an atypical antipsychotic. See PHYSICIANS' DESK REFERENCE, ("PDR"), 2793 (65th ed. 2011.)

speech and repeated herself. (R. at 206.) Mental status examinations show that Slone's mood was flexible, but her memory was intact, and her insight and judgment were competent. (R. at 225-26, 543-51.) In January 2007, Slone complained of insomnia and fatigue. (R. at 226.) Dr. Inocalla reported that Slone's affect was constricted, and her mood was anxious and depressed. (R. at 226.) In April 2007, Slone complained of "shakiness," fatigue and loss of interest. (R. at 225.) Slone's mood was described as anxious. (R. at 225.) Dr. Inocalla noted that Slone was shaking. (R. at 225.) In May 2008, Slone reported that her medication had helped her symptoms. (R. at 546.) She reported that her physical symptoms bothered her more than her mental symptoms. (R. at 547.)

On April 17, 2007, Dr. Ravi K. Titha, M.D., examined Slone at the request of Disability Determination Services. (R. at 227-36.) Dr. Titha reported that Slone appeared anxious and that she had tremors in her upper extremity. (R. at 229.) Slone could climb on the examination table with no difficulty. (R. at 229.) Her grasp and hand shake strength were normal. (R. at 229.) She was able to pick up a coin from a flat surface with no difficulty. (R. at 229.) Straight leg raising tests were negative. (R. at 230.) Dr. Titha reported that Slone's thought processes and content were normal. (R. at 230.) Slone had a depressed mood and flat affect. (R. at 230.) Dr. Titha reported that Slone's concentration and attention were poor. (R. at 230.) X-rays of Slone's right knee showed mild degenerative changes. (R. at 233-34.) X-rays of Slone's lumbosacral spine showed mild scoliosis. (R. at 233-34.) Dr. Titha diagnosed an anxiety disorder, pain in the right lower chest secondary to a motor vehicle accident and knee and ankle pain. (R. at 230.) Dr. Titha opined that Slone did not have any physical limitations to restrict her activities. (R. at 231.) Dr. Titha opined that Slone could sit and/or stand a total of

four to five hours in an eight-hour workday. (R. at 231.) Dr. Titha opined that Slone could lift and carry items weighing up to 30 pounds. (R. at 231.) No limitations were noted in Slone's abilities to reach, to handle, to feel, to grasp, to bend, to stoop, to crouch or to crawl. (R. at 231.) No visual, communicative or workplace environmental limitations were noted. (R. at 231.)

On June 25, 2007, Slone complained of hip pain. (R. at 275.) X-rays of Slone's hip showed degenerative arthritis. (R. at 275.) Slone denied depression and anxiety. (R. at 275.) Her examination was essentially normal, with the exception of her blood pressure being elevated. (R. at 275.) On July 10, 2007, Slone complained of hip pain. (R. at 274.) She denied new symptoms except for some headaches. (R. at 274.) Slone denied depression and anxiety. (R. at 274.) Dr. Titha diagnosed hip pain, benign essential hypertension, anxiety and hypothyroidism. (R. at 274.) On August 7, 2007, Dr. Titha reported that Slone's examination was essentially normal. (R. at 273.) Slone complained of tingling on her head and a skin rash. (R. at 273.) Slone denied depression and anxiety. (R. at 273.) On September 13, 2007, Slone reported that her headaches had improved. (R. at 272.) She stated that she needed medication to help her sleep and denied new symptoms. (R. at 272.) She denied depression and anxiety. (R. at 272.) Examination was normal. (R. at 272.) Dr. Titha diagnosed insomnia, benign essential hypertension and headaches. (R. at 272.)

On June 4, 2008, Slone complained of headaches and neck pain. (R. at 695.) Dr. Titha reported that Slone had a fine tremor in her upper extremity. (R. at 695.) Dr. Titha diagnosed headaches, dizziness and anxiety. (R. at 695.) On July 8, 2008, Slone reported that, overall, she had been doing fairly well. (R. at 694.) She

reported that she had sinus pressure, headaches and tremor in the upper extremity. (R. at 694.) Slone's CT scan of the head was negative. (R. at 694.) X-rays of Slone's neck showed a moderate degree of degenerative disc disease at the C4-C5 and C5-C6 levels. (R. at 694.) On September 8, 2008, Slone complained of right hip and right thigh pain and insomnia. (R. at 693.) She denied depression and anxiety. (R. at 693.) On October 13, 2008, Slone complained of lower back, right shoulder and right hip pain and insomnia. (R. at 696.) Dr. Titha noted that x-rays of Slone's right hip showed mild arthritis. (R. at 696, 701.) X-rays of Slone's right shoulder showed mild arthritic changes of the acromioclavicular joint. (R. at 700.) Slone had some lumbosacral spine tenderness and pain on the right hip joint on flexion and some tenderness on the neck. (R. at 697.)

On December 11, 2008, Slone complained of neck pain. (R. at 682.) She denied depression and anxiety. (R. at 682.) On January 12, 2009, Slone complained of neck pain, right hand and right leg pain and headaches. (R. at 681.) She denied depression and anxiety. (R. at 681.) Dr. Titha reported that Slone had no cyanosis, clubbing or edema of the extremities. (R. at 681.) On February 12, 2009, Slone denied depression and anxiety. (R. at 680.) On March 12, 2009, Slone complained of dizziness, neck pain and weakness. (R. at 679.) She denied depression and anxiety. (R. at 679.)

On April 27, 2007, Dr. Robert McGuffin, M.D., a state agency physician, indicated that Slone had the residual functional capacity to perform medium[8] work. (R. at 244-50.) No postural, manipulative, visual, communicative or environmental

---

[8] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. § 404.1567(c) (2010).

limitations were noted. (R. at 246-47.) Dr. McGuffin found Slone's allegations to be partially credible. (R. at 249.)

On April 30, 2007, Eugenie Hamilton, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Slone suffered from a nonsevere affective disorder and anxiety-related disorder. (R. at 251-64.) Hamilton found that Slone was mildly restricted in her activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 261.) She found that Slone had not experienced any repeated episodes of decompensation of extended duration. (R. at 261.)

On December 7, 2007, E. Hugh Tenison, Ph.D., a state agency psychologist, completed a PRTF indicating that Slone suffered from a nonsevere affective disorder and anxiety-related disorder. (R. at 277-90.) Tenison found that Slone was mildly restricted in her activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 287.) He found that Slone had not experienced any repeated episodes of decompensation of extended duration. (R. at 287.) Tenison opined that Slone's mental allegations were not fully credible. (R. at 290.)

On December 10, 2007, Dr. Frank M. Johnson, M.D., a state agency physician, indicated that Slone had the residual functional capacity to perform medium work. (R. at 291-97.) No postural, manipulative, visual, communicative or environmental limitations were noted. (R. at 293-94.) Dr. Johnson found Slone's allegations to be partially credible. (R. at 296.)

On November 26, 2007, Slone saw Dr. James D. Moore Jr., M.D., a gynecologist, for sinus headaches and vaginal discharge. (R. at 388-90.) She denied fatigue and depression. (R. at 389.) Dr. Moore reported that Slone had normal range of motion in the neck and appeared to be in no acute distress. (R. at 389.) Dr. Moore reported that Slone's mood was not depressed, and her affect was normal. (R. at 390.) Her gait and stance were normal. (R. at 390.) On October 30, 2008, Slone denied fatigue and depression. (R. at 392.) Dr. Moore reported that Slone's gait was coordinated and smooth. (R. at 392.) She had a calm affect and no mood disorders. (R. at 392.) Slone had full range of motion of the neck. (R. at 392.)

On July 17, 2008, Slone was admitted to Buchanan General Hospital for left lower quadrant abdominal pain, lower gastrointestinal bleeding and weight loss. (R. at 415-542.) A CT scan of Slone's abdomen and pelvis showed changes in her colon most likely due to inflammatory bowel disease or ischemic colitis. (R. at 463-64.) She underwent a colonoscopy with biopsy which determined that she had ischemic colitis of the descending colon. (R. at 421-22.) The biopsy indicated the presence of ulceration of colonic mucosa. (R. at 424.) Slone was discharged on July 22, 2008, with a diagnosis of ischemic colitis and lower gastrointestinal bleeding. (R. at 416-17.) Slone was advised to have limited activity pending her follow-up appointment. (R. at 417.)

On August 20, 2008, a bone density test indicated that Slone had no osteoporosis or osteopenia. (R. at 414.) On September 17, 2008, Slone underwent a bilateral venous ultrasound which showed no evidence of deep vein thrombosis. (R. at 405.) X-rays of Slone's lumbodorsal spine showed mild degenerative disc

disease and mild spurring at the T12-L1 level. (R. at 406.) Her chest x-ray was normal. (R. at 407.)

On October 13, 2008, Dr. Emory H. Robinette, M.D., reported that he evaluated Slone for obstructive sleep apnea syndrome and complaints of increasing dyspnea on exertional activity. (R. at 655-57.) He reported that a polysomnography study showed a normal sleep efficacy with poor sleep stage progression. (R. at 648, 655.) The study also showed evidence of oxygen desaturation. (R. at 655.) Dr. Robinette diagnosed obstructive sleep apnea, moderate in severity with associated oxygen desaturation, dyspnea on exertion, which appeared to be multifactorial, possibly secondary to exercise deconditioning versus possible intrinsic lung disease, hypertensive cardiovascular disease, hypothyroidism and chronic anxiety and depression. (R. at 656.) Slone was advised to lose weight. (R. at 657.) On February 23, 2009, Dr. Robinette reported that he saw Slone for obstructive sleep apnea. (R. at 646.) A polysomnography study showed obstructive sleep apnea and profound oxygen desaturation. (R. at 646.) Dr. Robinette reported that he urged Slone to lose 60 to 80 pounds or to be compliant with her CPAP therapy. (R. at 646.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2010); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a

listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2010).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2003 & Supp. 2010); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

By decision dated May 8, 2009, the ALJ denied Slone's claim. (R. at 13-23.) The ALJ found that the medical evidence established that Slone suffered from severe impairments, namely osteoarthritis, migraine headaches, chronic fatigue syndrome and obesity, but he found that Slone did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15, 18.) The ALJ also found that Slone had the residual functional capacity to perform light work that did not require more than frequent pushing and pulling with her right upper extremity, that could be performed predominately indoors and that did not require concentrated exposure to excess humidity, pollutants and respiratory irritants. (R. at 18-19.) The ALJ found that Slone was able to perform her past relevant work as a store manager and a bookkeeper. (R. at 22-23.) Thus, the ALJ found that Slone was not under a disability as defined under the Act and was not eligible for benefits. (R. at 23.) *See* 20 C.F.R. § 404.1520(f).

In her brief, Slone argues that substantial evidence does not exist to support the ALJ's finding that she had the residual functional capacity to perform her past relevant work. (Brief In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 7-15.) In particular, Slone argues that the ALJ erred by failing to find that she suffered from a severe mental impairment. (Plaintiff's Brief at 8-11.) Slone also argues that the ALJ erred by failing to address her chronic fatigue syndrome and fibromyalgia. (Plaintiff's Brief at 11-14.)

Slone argues that substantial evidence does not exist to support the ALJ's finding that she had the residual functional capacity to perform her past relevant work. (Plaintiff's Brief at 7-15.) The ALJ in this case found that Slone had the

residual functional capacity to perform light work that did not require more than frequent pushing and pulling with her right upper extremity, that could be performed predominately indoors and that did not require concentrated exposure to excess humidity, pollutants and respiratory irritants. (R. at 18-19.)

While Slone alleged disability due to a variety of impairments, the evidence does not show that her impairments resulted in such degree of functional limitation as to preclude her performance of a reduced range of light work. X-rays of Slone's right shoulder, right hip and right knee showed only mild degenerative changes. (R. at 233-34, 696, 700-01.) She complained of back pain, but she retained normal mobility of her spine and had no neurological deficits to suggest nerve root impingement. (R. at 230, 272-75, 679-97.) She reported a limited ability to use her right arm and grip with her right hand, but examinations showed full strength in her upper and lower extremities, (R. at 230), and good grip strength, (R. at 663), suggesting no muscle weakness that would preclude her ability to lift 20 pounds occasionally and 10 pounds frequently. Her headaches improved with medication, and her chest pain was nonpulmonary. (R. at 272, 649, 679.) Slone had difficulty sleeping due to sleep apnea, but Dr. Robinette attributed this to her weight and advised her to improve her conditioning and her compliance with her CPAP therapy. (R. at 648-49.) Dr. Titha opined in April 2007 that Slone could sit and/or stand a total of four to five hours in an eight-hour workday and that she could lift and carry items weighing up to 30 pounds. (R. at 231.) In August and September 2007, Dr. Titha reported that Slone's examination was essentially normal. (R. at 272-73.) In November 2007, Dr. Moore reported that Slone had normal range of motion in the neck and appeared to be in no acute distress. (R. at 389.) Her gait and stance were normal. (R. at 390.) In August 2008, a bone density test indicated that

Slone had no osteoporosis or osteopenia. (R. at 414.) X-rays of Slone's lumbodorsal spine showed mild degenerative disc disease. (R. at 406.) Based on this, I find that substantial evidence exists to support the ALJ's finding with regard to Slone's physical residual functional capacity.

Slone also argues that the ALJ erred by failing to find that she suffered from a severe mental impairment. (Plaintiff's Brief at 8-11.) The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. § 404.1521(a) (2010). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1521(b) (2010). The Fourth Circuit held in *Evans v. Heckler,* that, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)) (emphasis in original).

In May 2006, Dr. Inocalla diagnosed Slone with a major depressive disorder and generalized anxiety disorder. (R. at 212.) However, by November 2006, Slone reported that her medication was helping. (R. at 206.) Slone's memory was intact, and her insight and judgment were competent. (R. at 225-26, 543-51.) In fact, in June, July, August, September and November of 2007, Slone denied symptoms of

depression and anxiety. (R. at 272-75, 389.) In July 2008, Slone reported that, overall, she had been doing fairly well. (R. at 694.) In September 2008, Slone again denied symptoms of depression and anxiety, and the record shows that she continued to deny symptoms of depression and anxiety through March 2009. (R. at 392, 679-82, 693.) In addition, the state agency psychologists found that Slone suffered from a nonsevere affective disorder and anxiety-related disorder. (R. at 251-64, 277-90.)

Furthermore, Slone testified at her hearing that for the past four years, treatment with Cymbalta had improved her symptoms of anxiety and depression. (R. at 738-39.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986). Although she had difficulty sleeping and limited concentration, mental status examinations showed that her affect and orientation were normal, she made good eye contact, her memory was intact and her insight and judgment were competent. (R. at 208, 225-26, 543-51.) Based on the above, I find that substantial evidence exists to support the ALJ's finding that Slone did not suffer from a severe mental impairment.

Slone contends that the ALJ's residual functional capacity finding is unsupported because he did not consider the effects of her obesity, fibromyalgia, chronic fatigue and obstructive sleep apnea. (Plaintiff's Brief at 11-14.) Based on my review of the ALJ's decision, I find that the ALJ evaluated Slone's obesity when he found that it was a severe impairment. (R. at 15.) The ALJ noted that pursuant to Social Security Ruling 02-1p, he considered the effect of Slone's obesity on her cardiovascular and respiratory systems, as well as on her weight-

bearing joints. (R. at 21.) He also considered the effect of her obesity on her ability to sustain activity on a regular and continuing basis. (R. at 21.) The ALJ provided Slone with limitations in lifting, standing and walking. (R. at 21.)

The ALJ also considered Slone's fibromyalgia and chronic fatigue syndrome, finding that Slone's chronic fatigue syndrome was a severe impairment. (R. at 15.) The ALJ did not find, however, that Slone's fibromyalgia was a severe impairment because the evidence shows that her primary diagnosis was chronic fatigue syndrome, and on only three occasions did Dr. Sutherland even mention fibromyalgia. (R. at 213-14, 269.) In addition, Slone was never evaluated or treated by a specialist in fibromyalgia, and there is no evidence that her complaints of joint pain and fatigue were attributed to fibromyalgia.

Finally, Dr. Robinette opined that Slone's sleep would improve if she lost weight, improved her conditioning and used her CPAP machine appropriately. (R. at 648-49.) He rendered no opinion that Slone would be functionally limited due to her sleep apnea. Therefore, I find that sufficient evidence exists to support the ALJ's finding that Slone's sleep apnea was not a severe impairment.

Based on the above, I find that sufficient evidence exists to support the ALJ's finding with regard to Slone's residual functional capacity. I also find that substantial evidence exists to support the ALJ's finding that Slone could perform her past relevant work as a store manager and a bookkeeper.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the ALJ's finding that Slone did not suffer from a severe mental impairment;

2. Substantial evidence exists to support the ALJ's finding with regard to Slone's residual functional capacity;

3. Substantial evidence exists to support the ALJ's finding that Slone could perform her past relevant work; and

4. Substantial evidence exists to support the ALJ's finding that Slone was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Slone's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the final decision of the Commissioner denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2010):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the

> court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: January 28, 2011.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE